Allen, J.
The first enquiry presented by this case, is, whether it was competent for the defendants below, to set up and rely upon the defence, that the goods in question were shipped on deck with the knowledge of the plaintiff, and therefore excluded from the benefit of general average. To admit any evidence to establish such facts, would, it is contended, be to contradict the terms of the bill of lading, the written contract between the parties. I do not deem it important to enter into a critical examination of the contract, to ascertain whether such evidence would or would not be consistent with the bill of lading. The perils of the sea are excepted; that the loss was incurred in consequence of those perils, is fully made out; and the only ground upon which Keating can rest, is the claim to general average. According to the maritime law, all who have been benefited by the loss of one, are bound to contribute to make it good, provided it is a proper case for general average. If Keating had proceeded against the ship owners for their misconduct in placing on deck the 20 hogsheads named in the bill of lading, without authority, it might then have become material to examine how far the evidence objected to conflicts with the written instrument.
The ship owner is held responsible for all the contributory shares of those interested in the cargo, because the case is supposed to fall within the principle of general average, and the cargo was delivered to the several *400 owners thereof without their having been required to c01ltl’ikute. If the ship owner should be held primarily liable on this ground, he would have a right to recover from the various shippers their contributory shares; and un¡ess the objection to the testimony would avail, if offered in defence to a bill against them for contribution, it ought not to avail here. Their liability results from the general principles of maritime law, and does not depend on any special contract with master or owner. Keating does not found his claim upon the bill of lading : he seeks to recover for the failure to deliver twenty-three hogsheads; the bill of lading mentions but twenty. The court below held it a proper case for general average, and rendered a decree for the amount to which, upon the principles of general average, Keating was entitled.
By the maritime law, the loss by general average is to be adjusted at the place, and according to the law of the port of discharge; Simonds & Loder v. White. With this agrees the Ordinance of Marine, Liv. 3. tit. 8. art. 6. And Valin, Tom. 2. p. 192. shews, that the laws of the Rhodians were the same. Norfolk being the port of discharge, the laws of Virginia must govern. On this subject, our statutes and reports are silent. Nor have we, in this case, any proof of general usage. The case being entirely new, we must resort to the general maritime law, and take that rule which seems to have received the sanction of most commercial nations.
The rule of the Rhodian law, as found in Abbott on Shipping, is this: “ If goods are thrown overboard in order to lighten a ship, the loss, incurred for the sake of all, shall be made good by the contribution of all.” But goods stowed upon deck are excluded from this benefit. The french ordinance also excludes them. And so far as the matter has been acted upon in the courts of this country, the same rule has been adopted. 3 Kent’s *401 Comm. 240. and the cases there cited. This being the general rale, is there any thing in this case to make it an exception ? It -was contended in argument, that the general rule should not apply, because the vessel was employed in the coasting trade, constructed for the purpose of taking freight on deck, and that it is known to all who ship on such vessels, that such is the usage; from which it is inferred that all should be liable for contribution in case of jettison. To sustain this view, an expression in Smith v. Wright is relied on: it is there stated, “that shippers on deck are not entitled to general average; that the shippers of goods under hatches, and the insurers on ship and cargo, are not liable to contribution, on account of their presumed ignorance of any part of the cargo being placed in so perilous a situation.” If this were the true reason of the rule, there would be great force in the argument. Shippers under hatches could not claim the benefit of a principle, founded on their presumed ignorance of a fact, when it clearly appeared they were fully apprised of it. But ihis cannot be the true reason; for the ship owner is entitled to contribution for damage sustained by the vessel, to save her in a case of extremity; which could not be, if the rule were founded on the reason above mentioned. The master or owner cannot be ignorant that the goods are shipped on deck. The true reason why contribution cannot be claimed for goods shipped on deck, is given in a note to the case referred to: “ The goods themselves increase the danger of the navigation, and are taken on board under an implied agreement that they shall be sacrificed if it be necessary to eject.” It is a penalty imposed on the shipper, who thus puts to hazard the safety of the ship and the lives of the crew. And this is the reason given by Valin, Tom. 2. p. 203. “ The reason why payment for efiects on deck thrown overboard or damaged, is refused by this article, is, that they serve only to embarrass the working of the *402 ship; the presumption is, that they have been thrown overboard, before an absolute necessity for jettison, and solely because they hinder and obstruct the working.” If I have a proper understanding of the sense of the orjginap the jettison of goods on deck is justified under circumstances which would not authorize the same course with goods under hatches: so I understand the phrase, la presomption est qu’ils auront été jettés avant toute necessity de jet. And there is good reason for it; with the loading under hatches and the decks clear', so that proper exertions could be made for her safety, the vessel would ride out a storm securely, which, with her decks incumbered with loading, would endanger her safety. Such being the true reason of the rule, the usage of vessels engaged in the coasting trade to take on deck loads (even if proved, which it is not in this record) and the knowledge of that fact by the other shippers, would not vary the rule. Accordingly, some of the cases referred to in the american reports, were cases of coasting vessels.
It was further argued, that the general rule should not apply to coasting vessels, upon the authority of Valin, Tom. 2. p. 205. where it is said, contribution may be claimed for goods thrown overboard from the deck of small coasting vessels or river craft, which usually carry a part of their cargoes on deck; to which Phillips on Ins. 332. refers, as supporting the position that the usage of trade may control the general rule. The instances put by Valin are of a very limited navigation, between ports in the immediate neighbourhood of each other, and where it was scarcely necessary to venture into the open sea. In such cases, but little if any difference is made in freight, so inconsiderable is the risk; and the master has the right, under the usage, to stow the cargo as he pleases. A benefit results to all the shippers in consequence; for no difference being made, the freight chargeable to all is reduced; and therefore as all are be *403 nefited, all should contribute. But no such reason can apply to the case where the master has no such right, and is only authorized to load on deck by special contract with the shipper. The instance referred to by Phillips, of the practice in whaling voyages to adjust, upon principles of general average, the loss of oil thrown overboard from the deck, where it is carried for a short time after being put into casks, before it can be properly and safely stowed in the hold, would seem to be founded on the same principle. All are benefited equally. If the oil cannot be stowed safely until it remains some time on deck after being put in casks, each adventurer is exposed to the same peril; the exposure is for the benefit of all interested in cargo and ship; and therefore, according to the principles of equal and exact justice which seem to pervade this branch of maritime law, all should contribute. But, in the case of coasting vessels on our coast, no benefit by the reduction of freight, or in any other way, accrues to the shipper under hatches, from taking on a deck load. The navigation is, on the open sea, rendered frequently more perilous from proximity to the shore, than navigation across the ocean.
I am therefore of opinion that this case does not fall within any of the exceptions to the general rule, and that Keating was not entitled to claim general average.
This view of the main question supersedes the necessity of enquiring whether the action can be maintained against the ship owner alone, if, in a case where general average can be claimed, he surrenders the cargo to the several shippers without collecting the contribution or taking from them any security.
I think the decree should be reversed and the bill dismissed.